UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **CHRISTINE ALIOTO** ) <br> On behalf of herself and all others ) <br> similarly situated, ) <br>  ) <br> Plaintiff, ) <br> v. ) <br>  ) <br> **CORNERSTONE CAREGIVING, LLC** ) <br>  ) <br> Defendant. ) <br>  ) <br>  ) <br>  ) | CASE NO. <br><br> JUDGE <br><br><br><br><br> **PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARD ACT AND STATE LAW WITH JURY DEMAND** |

Named Plaintiff Christine Alioto, through counsel, for her Class and Collective Action Complaint against Defendant Cornerstone Caregiving, LLC, states and alleges as follows:

## INTRODUCTION

1. This case challenges Defendant's timekeeping and pay practices by which they willfully violated their employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio's overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

2. Named Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Named Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins"). Her consent form is filed herewith pursuant to 29 U.S.C. § 216(b) and is attached as Exhibit 1.

3. Named Plaintiff also brings this case as a class action pursuant to FED. R. CIV. P. 23 on behalf of herself and other members of the class of persons, defined herein (the "Class Members"), who assert factually-related claims under Ohio's overtime compensation statute.

4. The allegations made herein are based on Named Plaintiff Christine Alioto's personal knowledge and conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Named Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over Named Plaintiff's state-law claim because that claim is so related to the FLSA claim as to form part of the same case or controversy.

7. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant has conducted continuous business within the territorial jurisdiction of this Court and a substantial part of the events or omissions giving rise to Named Plaintiff's claims occurred in this district and division.

## PARTIES

8. Defendant Cornerstone Caregiving, LLC is a limited liability company that is headquartered in Waco, Texas.

9. Cornerstone Caregiving's owners are Michael Hillman and Ryan Gibson.

10. Cornerstone Caregiving operates affiliated home health LLCs throughout the country, all also owned by Michael Hillman and Ryan Gibson.

11. Named Plaintiff Christine Alioto is a citizen of the United States and an Ohio resident and, as described below, was an employee of Defendant, working as a home health aide for Defendant's affiliate in the Cleveland, Ohio area.

12. All of Named Plaintiff's home health patients while working for Defendant were located in either Cuyahoga County or Lorain County, within the territorial jurisdiction of this Court.

13. Defendant Cornerstone Caregiving maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including through the promulgation and enforcement of policies affecting the payment of wages and overtime.

14. At all times relevant, Defendant benefitted from the work performed by Named Plaintiff and others similarly situated.

15. Defendant, operates and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or it has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level) during each of the three (3) years prior to the filing of this complaint up to and including the present year.

## **FACTUAL ALLEGATIONS**

16. Defendant operates a common business enterprise through its affiliates.

17. All of Defendant's affiliates are subject to centralized control of labor relations, common management, and common ownership/financial control.

18. By way of example, all affiliates, including Named Plaintiff's W-2 employer, are owned and operated by Cornerstone Caregiving's owners, Michael Hillman and Ryan Gibson.

19. By further way of example, Cornerstone Caregiving created, promulgated, and enforced the employee handbook governing the terms of employment of Named Plaintiff and all similarly situated employees.

3

20. By further way of example, Cornerstone Caregiving set the payroll rules dictating the standards and rates at which Named Plaintiff and all similarly situated employees were paid.

21. By further way of example, Cornerstone Caregiving amended the travel time pay policy for employees at all affiliated entities in January 2025.

22. Thus, Cornerstone Caregiving jointly employs, along with its affiliated entities, Named Plaintiff and all similarly situated persons, and operates a single integrated enterprise with its affiliates.

23. Defendant Cornerstone Caregiving was an "employer" of Named Plaintiff, all Potential Opt-Ins, and all Class Members pursuant to 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D)(2) in that it "act[ed] directly or indirectly in the interest of an employer… in relation to employees."

**Defendant's Employment of Plaintiff, the Potential Opt-Ins, and Class Members**

24. Named Plaintiff was employed by Defendant from July 2024 through June 2025 as a home health aide.

25. Named Plaintiff was an hourly employee, and was non-exempt from overtime pay.

26. Named Plaintiff worked over forty hours per workweek in most weeks of her tenure working for Defendant.

**Defendant's Failure to Pay for All Hours Worked**

27. The FLSA required Defendant to pay its non-exempt employees for all hours they were "suffer[ed] or … permit[ted] to work." 29 U.S.C. § 203(g).

28. Moreover, "travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38.

4

29. As home health aides, Named Plaintiff, the Potential Opt-Ins, and the Class Members routinely travel from patient-to-patient within a workday.

30. Indeed, Named Plaintiff's normal schedule, on days where she did not pick up additional shifts, involved intraday travel on Mondays, Tuesdays, and Fridays.

31. By companywide policy, at all times relevant prior to January of 2025, Defendant did not pay Named Plaintiff, the Potential Opt-Ins, and the Class Members for travel from patient-to-patient during the workday.

32. A companywide email dated December 30, 2024 (depicted below) informed employees of the "Exciting Update" that they would now be compensated – as the law has required for almost a century – for intraday travel:



33. As Named Plaintiff's patient-care schedule regularly exceeded 40 hours per workweek exclusive of the intraday travel, Defendant's pre-January 2025 policy of failing to pay

5

for intraday travel deprived Named Plaintiff, as well as similarly situated Potential Opt-Ins and Class Members, of overtime pay due.

### Defendant's Failure to Pay Required Overtime Compensation at the Legally-Mandated Rate

34. The FLSA requires covered employers to pay non-exempt employees overtime compensation at one-and-one-half times their "regular rate" for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207.

35. Named Plaintiff, the Potential Opt-Ins, and all Class Members were all non-exempt from overtime pay under 29 U.S.C. § 207.

36. Named Plaintiff, the Potential Opt-Ins, and all Class Members frequently worked more forty hours per week, entitling them to overtime compensation under the FLSA.

37. Unless excludable under 29 U.S.C. § 207(e), employers must include "all remuneration for employment paid to, or on behalf of, the employee" in calculating an employee's regular rate of pay.

38. Defendant systematically failed to include all forms of compensation in calculating the regular rate of pay and overtime premium calculations for Named Plaintiff, the Potential Opt-Ins, and all Class Members.

39. By way of example, Named Plaintiff, the Potential Opt-Ins, and all Class Members received an hourly rate of pay for time spent with patients and also regularly received non-discretionary bonuses for certain services rendered, such as picking up extra shifts.

40. Defendant induced Named Plaintiff, the Potential Opt-Ins, and the Class Members to work extra shifts by offering extra bonus pay for that work.

6

41. Defendant engaged in a uniform pattern, practice, or policy of violating the FLSA with respect to Named Plaintiff, the Potential Opt-Ins, and the Class Members by failing to include the bonuses in calculating their regular rate of pay as required by 29 U.S.C. § 207.

### The Willfulness of Defendant's Violations

38. Defendant knew that Named Plaintiff, the Potential Opt-Ins, and the Class Members were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or otherwise acted in reckless disregard for whether they were so entitled.

39. Defendant intentionally and willfully circumvented the requirements of the FLSA and state law. Defendant designed its timekeeping and payroll policies and practices in an attempt to reduce employees' paid hours and circumvent wage-and-hour laws.

40. For instance, Defendant knew, and in fact required, that employees regularly and routinely traveling during their workdays, but intentionally designed their compensation structure to deprive employees of that pay until January 2025.

41. Likewise, Defendant was patently aware of its obligation to pay overtime based upon a correctly calculated regular rate of pay.

42. In fact, Defendant partially instituted a weighted overtime pay calculation, which accounted for some of Named Plaintiff's requisite remuneration, but excluded portions – like shift pick-up bonuses, which clearly must be included.

43. In order to institute that practice, Defendant knew that they had to conduct a weekly calculation to determine employees' regular rate of pay, and simply chose not to include clearly includable portions of employees' pay into the regular rate calculation.

## COLLECTIVE ACTION ALLEGATIONS

44. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

45. Named Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability "prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of themselves and other employees similarly situated. "

46. The Potential Opt-Ins who are "similarly situated" to Named Plaintiff with respect to Defendant's FLSA violations consist of:

> All Cornerstone Caregiving home health aides who worked one or more workweeks exceeding forty hours during the period three years preceding the commencement of this action to the present.

47. Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all were subject to and injured by Defendant's unlawful timekeeping and payroll practices, and all have the same claims against Defendant for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

48. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary, and all such persons were sent a Court-authorized notice informing them of the pendency of the action and giving them the opportunity to "opt in."

49. Upon information and belief, the number of similarly-situated persons exceeds 1,000 persons.

## CLASS ACTION ALLEGATIONS

50. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

51. Named Plaintiff brings this case on behalf of herself and other members of a proposed class, defined as:

> All Ohio Cornerstone Caregiving home health aides who worked one or more workweeks exceeding forty hours during the period two years preceding the commencement of this action to the present.

52. The classes are both so numerous that joinder of all Class Members is impracticable. Named Plaintiff avers, upon information and belief, that the class totals more than 1,000 employees of Defendant. The number of Class Members as well as their identities are ascertainable from records Defendant has maintained, and was required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

53. Questions of law or fact common to the Class Members predominate, including but not limited to:

   a) Whether Defendant paid Named Plaintiff and other Class Members the correct, legally mandated rate for overtime hours; and

   b) Whether Defendant's exclusion of intraday travel time from the working hours of Named Plaintiff and other Class Members violated Ohio law.

54. Named Plaintiff's claims are typical of the claims of other Class Members. Named Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other Class Members.

55. Named Plaintiff will fairly and adequately protect the interests of the Class Members. Named Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Class Members. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and is fully qualified to prosecute the claims of the Class Members in this case.

56. The questions of law or fact that are common to the Class Members predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the class, including those questions listed above, are common to the Class Members as a whole, and predominate over any questions affecting only individual class members.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class Members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Class Members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to FED. R. CIV. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

58. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

59. Named Plaintiff bring this claim for violation of the FLSA's overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b).

60. The FLSA required Defendant to pay their non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

61. Defendant failed to pay overtime compensation to Named Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above, Defendant, in violation of law, required Named Plaintiff and the Potential Opt-Ins to

10

perform unpaid work off-the-clock, including intraday travel, and failed to pay Named Plaintiff and the Potential Opt-Ins' overtime hours at one-and-one-half their regular rate of pay.

62. By engaging in those practices, Defendant willfully violated the FLSA and regulations thereunder that have the force and effect of law.

63. As a result of Defendant's violations of the FLSA, Named Plaintiff and the Potential Opt-Ins were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Overtime Violations)

64. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

65. Named Plaintiff brings this claim for violation of the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, on behalf of herself and the Class Members.

66. At all times relevant, Defendant was an employer covered by the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

67. Defendant violated the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, by failing to pay all overtime compensation due to its home health aides.

68. Ohio Rev. Code Ann. § 4111.10(A) provides that Defendant, having violated § 4111.03, is "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff respectfully requests that the Court:

A. Direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in pursuant to 29 U.S.C. § 216(b);

B. Certify this case as a class action pursuant to FED. R. CIV. P. 23 on behalf of Named Plaintiff and the Class Members;

C. Enter judgment against Defendant and in favor of Named Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Class;

D. Award compensatory damages to Named Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E. Award compensatory damages to Named Plaintiff and the Class Members in the amount of their unpaid wages plus an equal amount in liquidated damages; and

F. Award Named Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

Respectfully submitted,

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)
**TITTLE & PERLMUTER**
4106 Bridge Avenue
Cleveland, OH  44113
216-308-1522
Fax: 888-604-9299
scott@tittlelawfirm.com

Attorney for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)